UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

MARIA LYNN VINCENT,

                Plaintiff,

v.                                                               CASE # 18-cv-01508

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────────────────────

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KELLY ELIZABETH
  Counsel for Plaintiff                             LAGA-SCIANDRA, ESQ.
600 North Bailey Ave                             KENNETH R. HILLER, ESQ.
Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                ARIELLA RENEE ZOLTAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the Plaintiff's motion for judgment on the administrative record is **DENIED**, the Defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 30, 1990, and graduated high school. (Tr. 197, 22). Generally, Plaintiff's alleged disability consists of depression, anxiety, bipolar disorder, attention deficit hyperactivity disorder (ADHD), and chronic back pain. (Tr. 201). Her alleged onset date of disability is August 1, 2011. (Tr. 197).

### B. Procedural History

On June 23, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 156-168). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 9, 2017, Plaintiff appeared before the ALJ, Sharon Seeley. (Tr. 12). On October 4, 2017, ALJ Seeley issued a written decision finding Plaintiff not disabled under the Social Security Act. (Tr. 9-24). On October 30, 2018, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-8). Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since August 1, 2011, the application date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: major depressive disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD") and cocaine dependency/abuse (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can: understand, remember and carry out simple, routine instructions and tasks, and maintain attention and concentration sufficient for such tasks with customary work breaks; have occasional, incidental interaction with coworkers and the general public; work in an environment with no exposure to large groups of people or to noise above a moderate level such as that found in a business office, supermarket, or department store; and work in a low-stress environment, meaning one with no supervisory responsibilities, no independent decision making required except with respect to simple, routine work related decisions, no work at a highly speeded production rate pace required, and minimal changes to work routines, processes and settings.

6. The claimant, having never been employed at the level of substantial gainful activity, has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 30, 1990, and was 21 years old, which is defined as a younger individual age 18-44, on the alleged onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2011, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 9 -24).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes essentially three arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues ALJ failed to develop the record and recontact for clarification of record ambiguities. (Dkt. No. 12 at 21 [Pl.'s Mem. of Law]). Second, the ALJ failed to properly weigh the three opinions. (Dkt. No. 12 at 23, 25). Third, the ALJ relied on "gross mischaracterizations" of the evidence and record to improperly support the decision. (Dkt. No. 12 at 27).

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly weighed the medical opinion evidence. (Dkt. No. 15 at 8 [Def.'s Mem. of Law]). Second, that the ALJ had no further obligation to develop the record or recontact Plaintiff's treating sources. (Dkt. No. 15 at 14). Third, the ALJ did not mischaracterize the record in assessing Plaintiff's claims. (Dkt. No. 15 at 16).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

IV. ANALYSIS

Many of Plaintiff's arguments relate to the March 8, 2017 written opinion of Shannon Dunn, identified as a social worker. Plaintiff's memorandum focuses on an exchange in the testimony in support of her arguments. (Dkt. No. 12 at 5-6). Unfortunately, Plaintiff's characterization of the testimony is misleading because it omits parts of the exchange which are unfavorable to her position. Plaintiff also fails to mention that the ALJ saw the Dunn opinion for the first time at the hearing, when in fact it should have been presented prior to the evidentiary testimony. (Tr. 38). The following exchange occurred with the testimony omissions in bold:

ALJ: So who is this new counselor?

Atty: This counselor is still at Spectrum.

ALJ: So it's someone form whom we have no records?

**ATTY: I'm not positive how many times the claimant has seen her. Like I said, her usual counselor is out for --**

CLMT: That's also my group counselor as well, so I see -- I've been seeing her every week for the last two years.

**ALJ: Only in group?**

**CLMT: Only in group**

CLMT: I've had about six visits with her total.

**ALJ: When you say visits, do you mean –**

**CLMT: like –**

**ALJ: -- not in a group?**

CLMT: -- one on one, year, one-on-one sessions.

**ALJ: So when did you request the medical source statement?**

**ATTY: Let's see, we had requested this on January 26, 2017.**

ALJ: **All right. Well, as you know**, it makes it difficult for me to be prepared **for a hearing if I don't have - -** particularly in a case where there are no other medical source statements from treating sources for me to consider. **It's difficult for me to be prepared for a hearing if I get a medical source statement as you walk in --**

(Tr. 38-39).

When asked by the ALJ if there was other evidence that was relevant to the disability determination that has not yet been submitted, Plaintiff's counsel responded, "not to my knowledge" (Tr. 40).

Therefore, it is disingenuous for the Plaintiff to criticize the ALJ's uncertainty about Ms. Dunn's credentials or treating relationship and failure to get records considering counsel was not able to tell the ALJ the proper relationship or treatment history at the hearing. The Court concludes that the ALJ properly evaluated the opinion evidence and satisfied her duty to develop the record, resulting in a determination that was based on substantial evidence, as more wholly discussed hereafter.

**A. Opinion Evidence**

The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do provided by any medical source. *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). It is also within an ALJ's discretion to compare and contrast the various medical opinions, along with all other relevant evidence, to resolve the conflicts in the evidence and determine Plaintiff's RFC (Tr. 21-22). *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal*, 134 F.3d at 504. There were three medical opinions in this case. Plaintiff argues the ALJ should have assigned greater weight to the opinion of Ms. Dunn and her 2017 opinion should have been given greater weight than other acceptable medical opinions from 2014[1]. (Dkt. No 12 at 24).

Consultative examiner Janice Ippolito, Psy.D., examined the claimant on October 21, 2014. (Tr. 563). She opined Plaintiff could follow and understand simple directions and instructions, perform simple tasks and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks independently, make appropriate decisions and relate adequately with others. (Tr. 563). Dr. Ippolito noted Plaintiff would have mild limitations to maintain a regular work schedule and moderate limitations to appropriately deal with stress. (Tr. 563). The ALJ gave limited weight to this opinion, stating the opinion of Dr. Tzetzo, discussed below, was more consistent with the record and suggestive of greater limitations. (Tr. 21).

On October 28, 2014, the non-treating, non-examining State agency psychological consultant H. Tzetzo, M.D. opined that Plaintiff was able to understand and follow directions, maintain attention for work tasks, related adequately with a supervisor, use judgement to make

---

[1] As noted by the Commissioner, curiously Plaintiff also argues the ALJ erred in assigning more weight to a non-examining source than to the consultative examiner. (Dkt. No. 12 at 24). However, the non-examining opinion had greater limitations than the consultative examiner. (Tr. 20-21). This argument will not be addressed in greater detail as it would not support Plaintiff's claims for disability benefits.

work-related decisions, and handle brief and superficial contact with the public and coworkers. (Tr. 90-91). Although he did not examine the claimant, he cited Dr. Ippolitio's mild mental status evaluation findings in support of his opinion. He also noted that Plaintiff attended outpatient mental health treatment "sporadically" and was able to do cooking, grocery shopping, childcare, showering, and dressing independently. (Tr. 90-91). As stated above, the ALJ gave "greater weight" to this opinion because it was more consistent with the record as a whole. (Tr. 21).

The third opinion was from Shannon Dunn, dated March 8, 2017. (Tr. 659-663). Ms. Dunn reported Plaintiff's PTSD and depression caused severe agoraphobias, lack and loss of motivation and difficulty concentrating. (Tr. 659). Ms. Dunn opined Plaintiff would have a "poor ability[2]" and would frequently, between 1/3 and 2/3 of a work day, be significantly impaired and/or precluded from the performance of (1) follow work rules; (2) deal with the public; (3) use judgment; (4) deal with work stress; (5) function independently; and (6) maintain attention and concentration. (Tr. 661). Ms. Dunn stated Plaintiff had a poor ability to understand, remember and carry out complex and detailed job instructions. (Tr. 662). She also opined Plaintiff had a "poor" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 661). Plaintiff could perform two step work tasks 90% satisfactorily but only with 75% successful satisfactory ability to perform three or more step tasks. (Tr. 661). Ms. Dunn concluded that Plaintiff would miss work due to treatment or impairments more than four days per month. (Tr. 663).

The ALJ did not give significant weight to this opinion because it was not well supported and the severe limitations were inconsistent with the other evidence of record. (Tr. 22). Specifically, the ALJ noted that mental status examinations in the record did not support Ms.

---

[2] Poor ability" is defined in the form as "low level of functioning in the area, will frequently significantly impair and/or preclude performance of even simple work tasks. (Tr. 661).

Dunn's opinions of severe functional limitations. (Tr. 22). Although not listed out by the ALJ, the treatment notes from Spectrum Health generally reported findings of depressed mood but otherwise normal speech, logical thought processes, intact associations, fair insight and judgment, intact memory, intact attention and concentration, average fund of knowledge, and cooperative attitude. (*See, e.g.*, Tr. 327, 372, 467-68, 524, 528, 530, 540-41, 602, 624, 626, 631). An ALJ's failure to cite specific evidence does not indicate that it was not considered. *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005). Additionally, other examining sources found mostly normal clinical findings during the relevant period. A psychiatric evaluation performed at Erie County Medical Center on December 10, 2013, revealed cooperative attitude, appropriate and calm behavior, neutral mood, appropriate affect, normal speech, organized and goal-directed thought processes, normal thought content, average intellectual functioning, and fair insight and judgment. (Tr. 284-85). Dr. Ippolito's examination in October 2014 revealed findings of cooperative behavior, adequate social skills, appropriate eye contact, clear and fluent speech, coherent and goal-directed thought processes, intact concentration and attention, intact recent and remote memory, average intellectual functioning, and fair-to-good insight and judgment. (Tr. 562). Ms. Dunn's opinion was also inconsistent with Dr. Tzetzo's opinion that Plaintiff was able to understand and follow work directions, maintain attention for work tasks, relate adequately with a supervisor, use judgment to make work-related decisions, and handle brief and superficial contact with the public and coworkers. (Tr. 90-91).

The ALJ also properly noted that the Dunn opinion of March 2017 retroactively opined the limitations back to 2011. However, Dunn was not treating Plaintiff at that time and the limitations were inconsistent with Plaintiff's ability to perform part-time work in 2012 and 2013. (Tr. 22, 663). The ALJ specifically recognized that Plaintiff worked part-time as a sales associate in a retail store and established good relationships with coworkers, which contradicted Ms. Dunn's opinions that

Plaintiff demonstrated poor ability to behave in a stable manner, relate in social settings, demonstrate reliability, deal with the public, and function independently. (Tr. 22 *referring to* Tr. 46-47). The ALJ's conclusion that the opinion was not entitled to significant weight was reasonably concluded as shown by the ALJ's cites of inconsistency with the medical and nonmedical evidence of record. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The Courts have also specifically stated that an ALJ may discount the opinion of a treating source, or non-acceptable medical source, when it is inconsistent with a claimant's treatment records. *See, e.g., Suttles v. Berryhill,* 756 F. App'x 77, 77-78 (2d Cir. 2019) ("The ALJ's assessments of [the claimant]'s treaters were supported by substantial evidence;" ALJ appropriately accorded little weight to a treating nurse practitioner's opinions because "she was not an acceptable medical source and her opinions were inconsistent with [the claimant]'s medical records.").

As alluded to, Plaintiff also argues the ALJ erred by not properly considering the source of the Dunn opinion, in part because of the confusion over Ms. Dunn's credentials and treating relationship. (Dkt. No. 12 at 24). The ALJ did however treat Ms. Dunn's opinion as an "other source" in recognition of Plaintiff's testimony that it was her "counselor" who saw her on a re-occurring basis. Plaintiff's brief correctly states that this was appropriate as a social worker's opinion is not entitled to controlling weight. (Dkt. No. 12 at 23 citing *Martino v. Comm'r of Soc. Sec.*, No. 1:17-CV-01071 EAW, 2018 WL 5118318, at *7 (W.D.N.Y. Oct. 19, 2018); *see also* SSR 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006)). The ALJ, as outlined above, explained in her decision that the opinion was not supported by clinical findings or consistent with the evidence of record, and therefore concluded it was not entitled to significant weight. (Tr. 21-22).

Plaintiff's argument that the ALJ erred in assigning more weight to the opinion of Dr. Tzetzo, than to the opinion of Ms. Dunn, is also without merit. (Dkt. No. 12 at 24). Dr. Tzetzo is

an acceptable medical source and Ms. Dunn is just an "other" medical source. While there may be times that the opinions of non-examining sources are inferior to treating sources' opinions, case law holds it is only if the treating source opinions are supported by evidence in the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir.1995). Despite Plaintiff's argument, a State agency physician can provide substantial evidence to support an ALJ's RFC finding. *Micheli v. Astrue,* 501 F. App'x 29 (2d Cir. 2012). The ALJ very clearly stated she found Dr. Tzetzo's opinion consistent with the evidence of record and Ms. Dunn's opinion inconsistent with the evidence of record. (Tr. 21-22). The Court concurs.

The argument that the opinions of Dr. Tzetzo and Dr. Ippolito were "stale" because of the completion date in 2014 is also unavailing. (Dkt. No. 12 at 24-25). In her comprehensive discussion on the opinion evidence, the ALJ specifically noted Dr. Tzetzo's opinion was based on a review of the record available at the initial level, but that she still found it more consistent with the record as a whole. (Tr. 21). Plaintiff has not shown any subsequent treatment notes that differ materially from the evidence that was before Dr. Tzetzo. *Camille v. Colvin*, 652 F. App'x 25, 28 n.4. (2d. Cir. 2016) (summary order)(an ALJ is entitled to assign great weight to the opinion of a state agency psychological consultant that has not reviewed the entire longitudinal record, so long as the subsequent treatment notes and opinion evidence does not differ materially from the evidence reviewed by the consultant). To the contrary, Plaintiff testified in 2017 that her mental condition was "getting better with treatment" and she also reported had stopped treatment for a period because she was "feeling okay" on her own. (Tr. 49, 62).

### B. Duty to Develop the Record or Recontact Treating Sources

Plaintiff again references the testimony exchange, arguing remand is appropriate because Plaintiff testified she had seen Ms. Dunn on six occasions prior to the hearing, and those occasions are not in the record. (Dkt. No. 12 at 27-28). Although the ALJ has a duty to develop the record, ultimately it is the plaintiff's burden to "prove to [the Social Security Administration] that [he is] blind or disabled." 20 C.F.R. §§ 404.1512(a), 416.912(a). In adhering to this responsibility, the plaintiff must "inform [the Administration] about or submit all evidence known to [him] that relates to whether or not [he is] blind or disabled." *Id.* Furthermore, if there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (ALJ under no obligation to seek additional information from treating source where there were no gaps or deficiencies in the voluminous record). The record however did contain treatment notes from Spectrum from 2011 to 2017, where Ms. Dunn was a provider. The Plaintiff was also sent for a consultative exam with a psychological consultant. Plaintiff's counsel did not aver that any records were missing, even after Plaintiff testified to the one-on-one sessions. (Tr. 40). There was no request to leave the record open and Plaintiff did not submit any additional records to the Appeals Council.

Plaintiff asserts the ALJ should have recontacted Ms. Dunn "for additional information and clarification." (Dkt. No. 12 at 27). The ALJ did not state ambiguities were considered when weighing the opinion but rather that the Dunn opinion was inconsistent with the record and unsupported. Ms. Dunn had the opportunity to provide clinical findings to support her opinions on the form but did not. An ALJ has no duty to re-contact a source where the evidence submitted by that source is complete and there is no indication that further contact will result in additional

information. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

### C. Mischaracterization of Record and Evidence

Plaintiff specifically asserts the ALJ improperly relied on the sporadic nature of her mental health treatment, mischaracterized her reports of domestic violence, and improperly suggested that Plaintiff engaged in treatment when under the scrutiny of Child Protective Services ("CPS"). (Dkt. No. 12 at 28-29). The record supports Plaintiff missed several appointments during the period at issue. The Commissioner's brief details the numerous dates. (Dkt. No. 15 at 15). The ALJ noted gaps in treatment from February 2013 to December 2013, and again from January 2015 to October 2015. (Tr. 19; *see* Tr. 473, 620-21). Plaintiff conceded there were "struggles" with attendance from 2011 to February 2013 because of pregnancy and part-time work. (Dkt. No. 12 at 27). However, she was only pregnant once during that period of two years. (Tr. 331, 334). Further, as stated by the ALJ, Plaintiff stopped going to treatment for several months after she stopped working. (Tr. 19, *See* Tr. 416, 417-418, 473). The ALJ's statements that attendance and compliance issues were in the record was not improper but supported by the record.

As it pertains to the the ALJ's discussion regarding domestic violence, the ALJ's decision recognizes Plaintiff's testimony that some of the gaps in her treatment were due to domestic violence but that it was unsubstantiated by the record. (Tr. 21). Plaintiff plainly states in her brief "she did not specifically tell providers gaps in treatment was due to domestic violence." (Dkt. No. 12 at 29). If the ALJ were to have made that connection she would have erred because that determination is not supported by substantial evidence. Further, she was no longer with the abusive partner after 2013 but continued to have compliance issues. (Tr. 50, 61).

14

Reference to the coinciding of mental health treatment and CPS involvement is also consistent with the record and was not a mischaracterization that requires remand. When her case was resolved with CPS in February 2013, Plaintiff did not return until December 2013 when CPS was involved again. (Tr. 375, 478). When the second case was closed in December 2014, treatment was again sporadic in 2015 and 2016. (Tr. 614, 620-621). Plaintiff had even testified she believed she stopped attending for a period in 2015 because she was feeling okay and that her treatment was "mandatory through Social Services." (Tr. 61, 62). The analysis in the decision reveals the ALJ did not rely solely on Plaintiff's compliance and frequency of treatment in her assessment of the Plaintiff's symptoms but also discussed her wide array of daily activities, work activity, and treatment notes. (Tr. 21-22).

Indeed, the substantial evidence standard is so deferential that there could be "two contrary rulings on the same record [and both] may be affirmed as supported by substantial evidence." *Cage v. Comm'n*, 692 F.3d 118 at 127(2d Cir. 2012)(citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)). Some of Plaintiff's arguments are a disagreement with how the ALJ evaluated the evidence. *See* Dkt. No. 12. When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished). In this case, the record was sufficiently developed and the ALJ properly weighed the medical evidence, including treatment notes, objective findings, medical opinions, and Plaintiff's testimony to reach an RFC determination that reflected her analysis of the credible evidence of record. (Tr. 9-24).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**DENIED;** and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is

**GRANTED.**

Dated: January 15, 2020
Rochester, New York

*J. Gregory Wehrman*
HON. J. Gregory Wehrman
United States Magistrate Judge